**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Terry Gerrard Gridine, Appellant.

Appellate Case No. 2021-001188

———

Appeal From Richland County
Jocelyn Newman, Circuit Court Judge

———

Unpublished Opinion No. 2025-UP-009
Submitted October 1, 2024 – Filed January 8, 2025

———

**AFFIRMED**

———

Appellate Defender Joanna Katherine Delany, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Assistant Attorney General Joshua Abraham Edwards, and Solicitor Byron E. Gipson, all of Columbia, for Respondent.

———

**PER CURIAM:** Appellant appeals his conviction for criminal sexual conduct 3rd degree and his sentence of ten years' imprisonment suspended upon the service of seven years and five years' probation. Appellant was also ordered to register as a

sexual offender.  On appeal, he argues the circuit court erred by: (1) prohibiting him from cross-examining Victim on whether she was arrested and unsuccessfully attempted to reach Appellant to help her obtain bail a week prior to the sexual assault, (2) prohibiting him from testifying that Victim was arrested and unsuccessfully attempted to reach him to help her obtain bail a week prior to the sexual assault, (3) prohibiting him from impeaching Victim with her prior inconsistent statements about the sexual assault, (4) prohibiting him from offering testimony from Victim's relative that Victim had a reputation and character for untruthfulness, and (5) denying his motion for a new trial based on cumulative error.  We affirm pursuant to Rule 220(b), SCACR, and the following authorities:

1.  Limiting Evidence of Victim's Bias[1]

Appellant argues the court erred in limiting his cross-examination of Victim and limiting his own testimony regarding Victim's arrest for shoplifting a week prior to the alleged sexual assault.  Appellant maintained Victim falsely accused him of sexual assault because she called him for assistance after her arrest and he did not help her.  During cross-examination of Victim, the trial court limited the evidence by precluding any mention of the arrest or call from jail, but allowed Appellant to testify to and cross-examine Victim on her unsuccessful attempt to seek assistance from Appellant.  During Appellant's cross-examination of Victim, the court relied on Rules 403, 404, and 608 of the South Carolina Rules of Evidence.  During his own testimony, the court relied on Rules 403 and 801(c) of the South Carolina Rules of Evidence to exclude the evidence.  We find no error in the court's rulings.

As to the limitations on Appellant's cross-examination of Victim, we find no reversible error.  The Confrontation Clause guarantees a defendant the opportunity to cross-examine a witness concerning bias.  *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *State v. Brown*, 303 S.C. 169, 171, 399 S.E.2d 593, 594 (1991); *see also State v. Mizzell*, 349 S.C. 326, 331, 563 S.E.2d 315, 317 (2002) (finding a defendant has the right to cross-examine a witness concerning bias under the Confrontation Clause).  Considerable latitude is allowed in the cross-examination of a witness for potential bias.  *State v. Clark*, 315 S.C. 478, 481, 445 S.E.2d 633, 634 (1994); *Brown*, 303 S.C. at 171, 399 S.E.2d at 594; *State v. McFarlane,* 279 S.C. 327, 330, 306 S.E.2d 611, 613 (1983).  On cross-examination, any fact may be elicited which tends to show interest, bias, or partiality of the witness.  *Mizzell*, 349 S.C. at 331, 563 S.E.2d at 317 (quoting *State v. Brewington,* 267 S.C. 97, 101, 226 S.E.2d 249, 250 (1976)).  The appropriate question under a Confrontation

---

[1] We combine Appellant's first and second issues.

Clause analysis is whether there has been any interference with the defendant's opportunity for effective cross-examination at trial. *Kentucky v. Stincer,* 482 U.S. 730, 730 (1987); *State v. Shuler,* 344 S.C. 604, 624, 545 S.E.2d 805, 815 (2001); *Starnes v. State,* 307 S.C. 247, 250, 414 S.E.2d 582, 583 (1991).

A criminal defendant may show a violation of the Confrontation Clause by "showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall,* 475 U.S. 673, 680 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)). The Confrontation Clause does not, however, prevent a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. *Id.* at 679. "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* Before a trial judge may limit a criminal defendant's right to engage in cross-examination to show bias on the part of the witness, the record must clearly show the cross-examination is inappropriate. *Mizzell,* 349 S.C. at 331, 563 S.E.2d at 317; *see* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); *State v. Alexander,* 303 S.C. 377, 382, 401 S.E.2d 146, 149 (1991) (construing Rule 403, SCRE, to allow a judge to exclude relevant evidence if the danger of unfair prejudice substantially outweighs its probative value); Rule 402, SCRE ("Evidence which is not relevant is not admissible.") *State v. Gracely*, 399 S.C. 363, 371, 731 S.E.2d 880, 884 (2012) ("This [c]ourt will not disturb a trial court's ruling concerning the scope of cross-examination of a witness to test his or her credibility, or to show possible bias or self-interest in testifying, absent a manifest abuse of discretion."). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b), SCRE. However, such evidence may "be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." Rule 404(b), SCRE. A witness's credibility "may be attacked or supported by evidence in the form of opinion or reputation," but the following limitations apply: "(1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness

for truthfulness has been attacked by opinion or reputation evidence."  Rule 608(a), SCRE.

Here, we find it was not error to limit cross-examination of Victim.  Appellant argues Victim's unanswered phone call was to seek Appellant's help in obtaining bail following her shoplifting arrest, and because he did not answer, she falsely accused him of sexual assault.  Victim denied this and claimed she was only calling Appellant so he could contact her daughter to help her obtain bail.  When she could not get in contact with Appellant, Victim instead called her sister.  We find the trial court did not abuse its discretion in prohibiting the mention of Victim's previous shoplifting arrest.  Importantly, the trial court still allowed Victim to be questioned on whether she unsuccessfully sought assistance from Appellant prior to the sexual assault.  The only limitation was that no mention of the arrest may be made.  Appellant was still able to confront the witness through cross-examination.

We also find no reversible error in the limitation of Appellant's testimony on the issue.  Evidence is relevant if it has "any tendency to make the existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence."  Rule 401, SCRE (emphasis added).  Rule 403 allows trial courts to exclude evidence that may lead to improper, emotional responses by a jury against a witness that may produce unfairly prejudicial attitudes towards that witness.  *See State v. Grace*, 350 S.C. 19, 28-29, 564 S.E.2d 331, 335-36 (Ct. App. 2002) (affirming trial court's exclusion of evidence pertaining to witness's prior suicide attempts); Rule 801(c), SCRE ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Rule 802, SCRE ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court of this State or by statute."); s*ee also Rock v. Arkansas*, 483 U.S. 44, 55-56 (1987) (finding although the right to present relevant testimony is not without limitation, restrictions placed on a defendant's constitutional right to testify by a State's evidentiary rules may not be arbitrary or disproportionate to the purposes they are designed to serve).  In *Rock*, the Supreme Court struck down Arkansas's "per se rule excluding a criminal defendant's hypnotically refreshed testimony."  *Id.* at 49.  The Court concluded Arkansas's absolute prohibition on a defendant testifying after she had undergone hypnosis unduly restricted the defendant's right to testify.  *Id.* at 62.  It held the "[w]holesale inadmissibility of a defendant's testimony is an arbitrary restriction on the right to testify in the absence of clear evidence by the State repudiating the validity of all posthypnosis recollections."  *Id.* at 61.

The Supreme Court later explained the type of evidentiary restriction that will give rise to a due process violation:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

As it relates to Appellant's own testimony, we do not believe the circumstances rose to the exceptional level required to show a due process violation. The trial court did not place arbitrary or disproportionate restrictions on Appellant's testimony. In contrast, the court allowed Appellant to testify to Victim reaching out for assistance prior to the sexual assault. His right to testify in his own defense was not so severely hampered, such as the absolute prohibition in *Rock*, to rise to the level of a due process violation. Because the exclusion of the evidence was based upon prior inadmissibility under Rule 403, inadmissible hearsay evidence, and it did not rise to the exceptional level required to show a due process violation, we find Appellant's right to testify in his defense was not violated.

    2. Impeachment of Victim with Prior Inconsistent Statements

Appellant argues the trial court erred when it prohibited him from impeaching Victim with prior inconsistent statements about the sexual assault because Appellant was entitled to confront his accuser and extrinsic evidence is admissible for impeachment under Rule 613(b) of the South Carolina Rules of Evidence. The State concedes and we agree the trial court erred in prohibiting the extrinsic evidence; however, we find such error was harmless.

"[A]n insubstantial error not affecting the result of the trial is harmless where 'guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.'" *State v. Pagan*, 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006) (quoting *State v. Bailey*, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989)). "Whether an error in the admission of evidence is harmless generally depends upon

its materiality in relation to the case as a whole." *State v. Brown*, 344 S.C. 70, 75, 543 S.E.2d 552, 554-55 (2001) (citing *State v. Reeves*, 301 S.C. 191, 193-94, 391 S.E.2d 241, 243 (1990)).

We find such error was harmless considering the rest of the evidence, specifically the text messages sent from Appellant to Victim following the sexual assault. In the messages, Appellant admits that he "f…..Up" and pleads for forgiveness from Victim. Further, when he was confronted with the events of the evening per Victim's messages, he does not deny the events, but rather states, "I can't live like this." We find these messages serve as a pseudo confession from Appellant and are very conclusive of his guilt. Further, the inconsistent statements the defense sought to introduce did not have any bearing on the actual allegations of sexual assault. They dealt with minor, collateral statements that we believe would not have affected the outcome of the jury. *See State v. Collins*, 409 S.C. 524, 537, 763 S.E.2d 22, 29 (2014) ("The harmless error rule generally provides that an error is harmless beyond a reasonable doubt if it did not contribute to the verdict obtained.").

### 3. Reputation/Character Testimony Regarding Victim

Appellant argues the trial court erred when it prohibited him from offering testimony from Victim's relative that Victim had a reputation and character for untruthfulness. Appellant argues this testimony was admissible as a hearsay exception and as a pertinent character trait of Victim. We disagree.

Defense counsel sought to introduce evidence that Victim had a reputation for untruthfulness via the testimony of Tomeka Scott, Appellant's niece, and Victim's great-niece. The trial court proffered Scott's testimony regarding the reputation for untruthfulness. Scott testified that she did not have a close relationship with Victim and the two rarely saw each other or spoke. Scott even admitted she tried to avoid Victim because other family members warned her that Victim was untrustworthy. When defense counsel asked about Victim's general reputation, the State objected to leading. The court excluded Scott's testimony on the basis that it was hearsay and did not qualify as an exception.

Generally, evidence of a witness's general bad character is not admissible. *See* Rule 404(a), SCRE (providing "evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ."). However, the Rules of Evidence carve out specific exceptions which allow a party to elicit evidence about a witness's

character in certain circumstances.  Several of the South Carolina Rules of Evidence apply here.  Rule 404(a)(2) allows "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused . . . ."  Rule 404(a)(3) allows "evidence of the character of a witness, as provided in Rules 607, 608, and 609."  Rule 608(a) provides the "credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness . . . ."  Rule 803(21) provides a hearsay exception for evidence of "[r]eputation of a person's character among associates or in the community."  Accordingly, reputation evidence should not automatically be excluded as hearsay.

The State concedes, "[t]he trial court probably should not have cut off Scott's proffered response to a question about [Victim's] 'general reputation."  But the objection was to leading, not to the substance of the underlying testimony.  The State claims defense counsel should have simply rephrased her question and tried again to elicit the information.  However, the State asserts even though the evidence was not excludable on hearsay grounds, this court should affirm on the alternate sustaining ground that the evidence would have been improper general character evidence.  Pursuant to Rule 608, the testimony elicited from Scott was only proper to show her character for truthfulness or untruthfulness.  However, during the proffer, the witness did not mention anything relating to Victim's character for untruthfulness.  Rather, Scott focused on extended family members' warnings not to trust Victim.  We find Scott's testimony could have been interpreted as an attack on Victim's character generally, not just her character for untruthfulness.  Accordingly, we find the proffered testimony from Scott constituted inadmissible general bad character evidence and affirm on the State's alternate sustaining ground.

Even if the trial court erred in excluding the testimony of Scott, we find any error was harmless.  We do not believe, considering the totality of the evidence, that had the jury heard about Scott's distant relationship with Victim, coupled with the testimony, that the outcome would have been different.  *See Collins*, 409 S.C. at 537, 763 S.E.2d at 29 ("The harmless error rule generally provides that an error is harmless beyond a reasonable doubt if it did not contribute to the verdict obtained.").

   4.  Cumulative Error Doctrine

Appellant argues the trial court erred when it denied his motion for a new trial based on cumulative error because the cumulative effect of the errors was so prejudicial as to deprive Appellant of a fair trial. We disagree.

We find no prejudicial errors combined to affect Appellant's right to a fair trial. *See State v. Beekman*, 405 S.C. 225, 237, 746 S.E.2d 483, 490 (Ct. App. 2013), *aff'd*, 415 S.C. 632, 785 S.E.2d 202 (2016) ("The cumulative error doctrine provides relief to a party when a combination of errors, insignificant by themselves, has the effect of preventing the party from receiving a fair trial, and the cumulative effect of the errors affects the outcome of the trial."); *id.* ("An appellant must demonstrate more than error in order to qualify for reversal pursuant to the cumulative error doctrine; rather, he must show the errors adversely affected his right to a fair trial to qualify for reversal on this ground."). As previously stated, we find the exclusion of evidence of the unanswered jail phone call was not error because the danger of unfair prejudice substantially outweighs its probative value. Further, even if the exclusion of Scott's testimony and the prior inconsistent statements made by Victim were errors, they did not prejudice Appellant in light of other evidence. Accordingly, Appellant's right to a fair trial was not affected by the exclusions.

**AFFIRMED.**[2]

**THOMAS, HEWITT, and VINSON, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.