**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Marvin Donte Bryan, Appellant.

Appellate Case No. 2017-001468

———————

Appeal From Charleston County
Deadra L. Jefferson, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-376
Heard September 10, 2025 – Filed November 19, 2025

———————

**AFFIRMED**

———————

Appellate Defender Joanna Katherine Delany, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Tommy Evans, Jr., both of Columbia,
for Respondent.

———————

**PER CURIAM:** Marvin Bryan was traveling in a car with three other people when a shootout ensued with a different vehicle. Multiple criminal charges followed; however, the precise charges are not relevant to this appeal.

Two of the people who were in the car with Bryan cooperated with the State and testified at trial. These were the only witnesses directly implicating Bryan in any crimes: they testified Bryan passed a handgun to his codefendant, Justin Wilson, so Wilson could continue shooting at the other vehicle. Bryan contends it was reversible error for the circuit court to prohibit him from impeaching one of those witnesses with a prior drug offense and a firearm charge pending in another circuit. He also challenges the circuit court's finding that the trial record was adequately reconstructed. We respectfully disagree and affirm.

## IMPEACHMENT

Rule 609, SCRE, allows for the admission of prior convictions to impeach a witness and describes three different ways certain prior convictions may be used. *State v. Robinson*, 426 S.C. 579, 592–93, 828 S.E.2d 203, 209–10 (2019). The relevant subsection, Rule 609(a)(1), allows "evidence that a witness other than an accused has been convicted of a crime punishable by death or imprisonment for more than one year (in the jurisdiction where the conviction occurred) . . . , subject to Rule 403, SCRE." *Id* at 593, 828 S.E.2d at 210.

As already noted, Bryan sought to impeach one of the key witnesses against him with the witness's prior conviction for possession of cocaine with intent to distribute. The circuit court appeared to rule that the conviction was inadmissible because drug convictions are not probative of truthfulness, but the transcript is not completely clear. That reasoning would be incorrect because, as our supreme court explained in *Robinson*, which was decided after this trial occurred, if we follow that conclusion to its "logical extreme, no convictions would ever have impeachment value under Rule 609 unless they were crimes of dishonesty or false statement . . . [and] Rule 609(a)(2) would inevitably swallow Rule 609(a)(1)." *Id.* at 599, 828 S.E.2d at 213. Indeed, part of the rule's rationale is "based on the assumption that we can infer from the fact of a felony conviction that the witness is not law abiding and, thus, has a propensity toward perjury." Victor J. Gold, 28 Fed. Prac. & Proc. Evid. § 6134 (Wright & Miller 2d ed. 2025 update).

The right to meaningful cross-examination of an adverse witness is included in the defendant's Sixth Amendment right to confront his accuser. *State v. Cheeseboro*, 346 S.C. 526, 544, 552 S.E.2d 300, 309 (2001). Still, "[a] violation of the Confrontation Clause is not per se reversible but is subject to a harmless error analysis." *State v. Gracely*, 399 S.C. 363, 375, 731 S.E.2d 880, 886 (2012). "An appellate court generally will decline to set aside a conviction due to insubstantial errors not affecting the result." *State v. Black*, 400 S.C. 10, 27, 732 S.E.2d 880, 890

(2012). "[T]he materiality and prejudicial character of the error must be determined from its relationship to the entire case." *State v. Reeves*, 301 S.C. 191, 193–94, 391 S.E.2d 241, 243 (1990). When evaluating the error in relation to the specific facts of the case, the court considers a host of factors such as: (1) the importance of the challenged testimony; (2) whether the challenged testimony was cumulative to other evidence; (3) whether the challenged testimony was corroborated or refuted on material points; (4) the extent of permitted cross-examination; and (5) the strength of the State's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

The first factor (importance of the challenged testimony) and the fifth factor (strength of the State's case) from *Van Arsdall* appear to weigh in favor of reversal, because, as previously mentioned, this witness was one of two witnesses who directly implicated Bryan in the charged offenses. The State's case against Bryan was largely built on witness testimony and circumstantial evidence. However, the remaining *Van Arsdall* factors weigh in favor of finding harmless error. This witness's testimony was corroborated by the other cooperating witness on all material points. Finally, and in our view, critically, Bryan attacked the witness's credibility with other evidence that was far more potent than the prior drug conviction.

Bryan's principal method of impeaching this witness relied on the fact that the witness had been charged with the same crimes as Bryan and was expecting leniency in exchange for his cooperation. Bryan used this effectively: the witness repeatedly admitted that he expected to receive "some kind of benefit" in exchange for his testimony. *See State v. Mizzell*, 349 S.C. 326, 333, 563 S.E.2d 315, 318 (2002) (finding "[t]he lack of a negotiated plea, if anything, creates a situation where the witness is more likely to engage in biased testimony in order to obtain a future recommendation for leniency"); *see also Boone v. Paderick*, 541 F.2d 447, 451 (4th Cir. 1976) ("[A] promise to recommend leniency (without assurance of it) may be interpreted by the promisee as contingent upon the quality of the evidence produced[;] the more uncertain the agreement, the greater the incentive to make the testimony pleasing to the promisor.").

Bryan also impeached the witness with the conflicting statements the witness had made during his proffer. The witness openly admitted to multiple lies in previous statements concerning this event.

We are sensitive to and sincerely appreciate Bryan's argument that credibility was crucial in this case. Even so, we are convinced any error in excluding the prior drug conviction was harmless to the jury's evaluation of this witness's credibility. *See,*

*e.g.*, *State v. Smith*, 315 S.C. 547, 552–53, 446 S.E.2d 411, 414 (1994) (finding harmless error when the witness was impeached with other evidence); *see also State v. Mitchell*, 330 S.C. 189, 197–98, 498 S.E.2d 642, 646–47 (1998) (holding any error was harmless because the witness's testimony was cumulative and the jury was presented with stronger impeachment evidence); *United States v. Chaika*, 695 F.3d 741, 745 (8th Cir. 2012) (finding it was harmless error for a trial judge to prohibit impeachment with a prior conviction because the witness's "promise to cooperate, and hoped-for leniency was far more potent 'ammunition'").

This reasoning leads us to reach the same conclusion with respect to Bryan's argument about the firearm charge that was pending in Orangeburg. While there was no evidence in the record indicating the witness expected to receive any benefit from the First Circuit solicitor in exchange for cooperating with the Ninth Circuit solicitor on these charges, there was nevertheless other ample and powerful evidence impeaching the witness's credibility. *See State v. Taylor*, 404 S.C. 506, 512–13, 745 S.E.2d 124, 127 (Ct. App. 2013) (concluding the circuit court did not err by refusing to allow the defendant to question a witness about the dismissal of pending charges because those charges were not relevant to the case as "there was no evidence linking the dismissals to [the witness's] decision to cooperate with the police"); *State v. Clark*, 315 S.C. 478, 480–82, 445 S.E.2d 633, 634–35 (1994) (finding any error in preventing the defendant from inquiring into a witness's pending murder charge was harmless because there was no agreement between the witness and the State).

**RECONSTRUCTED RECORD**

"[T]he inability to prepare a complete verbatim transcript, in and of itself, does not necessarily present a sufficient ground for reversal." *State v. Ladson*, 373 S.C. 320, 324, 644 S.E.2d 271, 273 (Ct. App. 2007) (quoting *State v. Smith*, 433 A.2d 1143, 1148 (Md. 1981)). "[B]efore a defendant can establish that he is entitled to a new trial on the basis of an inadequate reconstructed record, he must identity a specific appellate claim that this court would be unable to review effectively using the reconstructed record." *Id.* at 325, 644 S.E.2d at 273 (alteration in original) (quoting *Harris v. Comm'r. Corrs.*, 671 A.2d 359, 363 (Conn. App. Ct. 1996)).

Bryan concedes he is not aware of any specific appellate claim we cannot meaningfully review using the reconstructed record. He argues the reconstructed record could create issues when reviewing future claims for post-conviction relief.

We respectfully decline to speculate on the impact this record may or may not have on claims not currently before us. *See State v. Tucker*, 376 S.C. 412, 421, 656 S.E.2d

403, 408 (Ct. App. 2008) ("[Because Appellant] has yet to file for post-conviction relief, we find the current issue is not ripe for our review and we therefore decline to address it.").

**AFFIRMED.**

**MCDONALD, HEWITT, and TURNER, JJ., concur.**